IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 24, 2019

## STATE OF TENNESSEE v. RONNIE THOMAS BAKER

**Appeal from the Criminal Court for Davidson County
No. 2017-B-1381     Angelita Blackshear Dalton, Judge**

_____

### No. M2018-02221-CCA-R3-CD

_____

Defendant, Ronnie T. Baker, was convicted by a jury of aggravated assault, domestic assault, and interference with a 911 call.  The trial court sentenced Defendant to a total effective sentence of ten years, eleven months, and twenty-nine days.  On appeal, Defendant argues that (1) the evidence was insufficient to sustain his conviction of aggravated assault; (2) the trial court erred in admitting the victim's prior consistent statements; (3) the trial court erred in admitting testimony and photos concerning the interior of the victim's residence that showed destruction of the property by the Defendant; (4) the trial court erred by failing to merge the convictions for aggravated assault and domestic assault; and (5) the trial court erred in imposing the maximum sentence and by imposing partial consecutive sentencing.  After conducting a full review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT L. HOLLOWAY, JR., JJ., joined.

Martesha Johnson, District Public Defender; Jeffrey A. DeVasher (on appeal), Patrick Hakes and Stella Yarbrough (at trial), Assistant District Public Defenders, for the appellant, Ronnie Thomas Baker.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Glenn Funk, District Attorney General; and Amy M. Hunter, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On June 19, 2017, the Davidson County Grand Jury returned a five-count indictment against Defendant, charging him with aggravated burglary (Count 1), aggravated assault for intentionally or knowingly causing serious bodily injury (Count 2), domestic assault for intentionally, knowingly, or recklessly causing bodily injury (Count 3), vandalism valued $1000 or less (Count 4), and interfering with a 911 call (Count 5). At trial, the following facts were adduced.

Defendant and Lisa Williams had been in an on-again, off-again relationship for approximately twelve years and had lived together until Defendant left Ms. Williams's residence about two months prior to March 2017. On March 20, 2017, Ms. Williams was at home cooking dinner. She heard a car pull up outside and went to the door. Ms. Williams saw Defendant get out of the car. She asked Defendant what he wanted. Defendant "jerked the door out of [Ms. Williams's] hand and walked on in the house." Defendant asked about his belongings. Ms. Williams told Defendant they were "all in the washroom." Defendant became upset and began demanding other items, specifically clothing he gave to Ms. Williams, saying "another bitch can wear that." Defendant began cursing, screaming, throwing things out of Ms. Williams's closet and drawers, and throwing items of clothing at her. Defendant poured a can of grape soda onto Ms. Williams's bed. Defendant then ransacked Ms. Williams's kitchen. Ms. Williams testified that Defendant was "just cussing, just going off." She stated that Defendant "called me a bunch of bitches, hoes, . . . [t]old me I was messing around with somebody."

Attempting to distance herself from the situation, Ms. Williams stepped outside so that Defendant could "have room to leave." Instead of leaving, Defendant went outside, "got off the porch and came down there where [Ms. Williams] was[,] and he just started beating" her. Defendant punched Ms. Williams with his fists, pulled her hair, and scratched her. Ms. Williams attempted to call 911, but Defendant took her phone and smashed it on the ground twice, rendering it useless.

"[A]s that round got through," Ms. Williams stood up and headed towards her house. She was fearful that Defendant was coming up behind her, so Ms. Williams picked up a "stick," which was actually a porch rail. Ms. Williams swung the "stick" to keep Defendant from hitting her again, "slightly hit[ting] him in his head." Defendant, unfazed by the strike, took the "stick" from Ms. Williams, threw her down, and hit her in the eye with the "stick." Defendant then left in the car in which he arrived.

Ms. Williams's daughter arrived about five minutes after Defendant left and called 911. When Officer Kevin Reynolds from the Metropolitan Nashville Police Department arrived at Ms. Williams's residence, he spoke to Ms. Williams, took photographs, and collected evidence. Officer Reynolds testified that Ms. Williams was crying and very emotional. He observed that she had a laceration to her eye and a swollen face. Officer Reynolds stated that the interior of Ms. Williams's home "was a wreck."

The paramedics eventually transported Ms. Williams to the hospital. As a result of the assault, Ms. Williams suffered a broken nose, a broken eye socket, and various cuts, scratches, and bruises. Photographs of Ms. Williams's injuries were entered into evidence and showed a cut above Ms. Williams's left eye, a swollen shut left eye that was also black, and a cut on her neck. Ms. Williams's medical records were also entered into evidence. Ms. Williams described her level of pain as a ten out of ten. She was given multiple doses of Hydrocodone while at the hospital, and she was given a prescription for Hydrocodone to take as needed once she was discharged. Ms. Williams testified that she was still suffering from blurred vision due to the assault at the time of trial.

The State introduced photographs of the "stick" used in the assault and Ms. Williams's damaged cell phone. The State also introduced photographs of the damage done to the interior of Ms. Williams's home, which included pictures of clothes thrown about, food thrown out of cabinets, the trash can turned over, and a soda spilled on the bed. The trial court denied the introduction of a photograph that showed blood on the floor. During cross-examination, Ms. Williams admitted that there was no permanent damage done to the interior of her home.

Defense counsel read from the preliminary hearing transcript to point out several prior inconsistent statements that Ms. Williams had made in order to impeach her and attack her credibility. The prior inconsistent statements pertained to the timing of the incident, whether Ms. Williams was going to contact the police, whether Ms. Williams was going back into the house when she picked up the stick, and whether Defendant hit Ms. Williams with the stick or with his fist. The State, in an attempt to rehabilitate Ms. Williams's credulity, read at length from the same preliminary hearing transcript on re-direct examination to point out prior consistent statements and asked Ms. Williams if the statements made at the trial were consistent with those she made at the preliminary hearing. Defendant objected to the State's use of prior consistent statements. The State argued that prior consistent statements could be used to rehabilitate a witness once a witness has been impeached. The trial court overruled the objection.

At the end of the State's re-direct, Defendant moved for a mistrial. Defendant argued that the State improperly entered into evidence the entirety of the preliminary hearing transcript, which was hearsay that did not fall under any of the hearsay exceptions. The State responded that Defendant opened the door by admitting prior inconsistent statements and that the State is permitted to use prior consistent statements to rehabilitate a witness. The trial court denied the motion for mistrial. Defendant then asked the trial court to give the jury a limiting instruction. The following instruction was given to the jury:

The contents of the prior inconsistent statement are not to be considered as proof in the trial. However, immaterial discrepancies or differences in the statements of witnesses do not affect their credibility.

If a witness is thus impeached, the jury has the right to disregard his or her evidence, and treat it as untrue, except where it is corroborated by other credible testimony, or by the facts and circumstance proved on the trial.

Prior consistent statements are admissible to rehabilitate a witness or to respond to impeachment by a prior inconsistent statement. The prior consistent statements cannot be considered by the jury as substantive evidence and [are] to be used only in assessing the credibility of the witness. Any prior consistent statements can be used only as corroboration of the in court testimony of the witness after impeachment by opposing counsel.

Defendant did not testify at trial and offered no proof. The jury found Defendant guilty of aggravated assault in Count 2, domestic assault in Count 3, and interference with a 911 call in Count 5. Count 1, aggravated burglary, and Count 4, vandalism for the destruction of Ms. Williams's phone, were dismissed because the jury could not reach a verdict.

At the sentencing hearing, the trial court found Defendant had a total of four prior qualifying convictions and sentenced him as a Range II, multiple offender. The trial court sentenced Defendant to ten years on Count 2 for aggravated assault and eleven months, twenty-nine days each for Count 3, domestic assault, and Count 5, interference with an emergency call. The trial court also found that Counts 3 and 5 should be served concurrently with each other but consecutively to Count 2, giving Defendant an effective sentence of ten years, eleven months, and twenty-nine days.

The trial court further found that confinement was necessary, denying any form of alternative sentencing. The trial court found that the facts were "particularly egregious." Although Defendant was not indicted for vandalizing Ms. Williams's home, the trial court found credible testimony that Defendant violated the space where Ms. Williams should have felt safe. The trial court found that Defendant created a disturbance that resulted in Ms. Williams's fearing continued aggressive actions. The trial court also noted that less restrictive measures had been unsuccessfully used in the past. The trial court found all these factors to weigh in favor of confinement.

On October 15, 2018, Defendant filed a motion for a new trial, which was denied by the trial court. It is from the denial of the motion for new trial that Defendant now appeals.

*Analysis*

### I. Sufficiency of the Evidence

Defendant argues that the evidence is insufficient to support the aggravated assault conviction.[1] Specifically, Defendant contends that the State failed to prove the element of serious bodily injury because the evidence failed to prove extreme physical pain or the protracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty. The State, on the other hand, insists that the evidence was sufficient to show both extreme physical pain and the protracted loss or substantial impairment of a function of a bodily member.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). "'A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory.'" *Id.* (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). Therefore, the prosecution is entitled to the "'strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Questions concerning the "'credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.'" *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.* The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

---

[1] Defendant does not challenge the sufficiency of the evidence related to his convictions on the other counts.

As charged in this case, a person commits aggravated assault by intentionally or knowingly committing an assault that results in serious bodily injury to another. T.C.A. §§ 39-13-101(a)(1), -102(a)(1)(A)(i). A person acts intentionally "when it is the person's conscious objective or desire to engage in the conduct or cause the result." T.C.A. § 39-11-302(a). A person acts knowingly "when the person is aware of the nature of the conduct or that the circumstances [surrounding the conduct] exist" or "when the person is aware that the conduct is reasonably certain to cause the result." *Id.* at (b). Serious bodily injury includes bodily injury that involves "[e]xtreme physical pain" or a "[p]rotracted loss or substantial impairment of a function of a bodily member. . . ." T.C.A. § 39-11-106(a)(34)(C), (E). "In contrast, 'bodily injury,' an element of the misdemeanor offense of assault, includes 'a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment of the function of a bodily member, organ or mental faculty.'" *State v. Barnes*, 954 S.W.2d 760, 765 (Tenn. Crim. App. 1997) (citing T.C.A. §§ 39-13-101(a)(1); 39-11-106(a)(2)). As this Court has explained:

> While the phrase "serious bodily injury," an essential element of the offense of aggravated assault, is not susceptible to precise legal definition, it must describe an injury of a greater and more serious character than that involved in a simple assault. The distinction between 'bodily injury' and 'serious bodily injury' is generally a question of fact for the jury and not one of law.

*Id.* at 765-766.

Defendant relies on *State v. Sims*, 909 S.W.2d 46 (Tenn. Crim. App. 1995), *State v. Farmer*, 380 S.W.3d 96 (Tenn. 2012), and *State v. Eddie Leroy Rowlett*, No. M2011-00485-CCA-R3-CD, 2013 WL 749502 (Tenn. Crim. App. Feb. 26, 2014) *no perm. app. filed*, to support his argument that the State failed to prove serious bodily injury. In *Sims*, this Court held that the evidence of the victim's injuries was insufficient as a matter of law to support a finding of serious bodily injury based on extreme physical pain. *Sims*, 909 S.W.2d at 48-49. The victim was struck in the face with a pistol one time. *Id*. As a result, she had a broken and swollen nose, a bruised cheekbone, two black eyes, and a cut across the bridge of her nose. *Id*. The victim testified that she experienced extreme physical pain on her face and nose. However, the victim was in the hospital less than two hours and was prescribed no pain medication. *Id*. In *Farmer*, the victim was shot in the leg. *Farmer*, 380 S.W.3d at 98. "[T]he wound required minimal medical treatment and did not cause the victim to suffer a loss of consciousness, extreme pain, disfigurement, or impairment." *Id*. The supreme court reduced the conviction from especially aggravated robbery to aggravated robbery because the victim did not suffer a serious bodily injury. *Id*. In *Eddie Leroy Rowlett*, the defendant hit the victim in the eye with "some type [of] item wrapped around his hand." 2013 WL 749502 at *6-7. The victim's eye was swollen, and he lost vision for one night. *Id*. This Court reduced the defendant's

conviction of aggravated assault to assault because there was no proof of serious bodily injury or protracted loss or substantial impairment. *Id.*

Each of the cases relied upon by Defendant can be distinguished from the instant case. Here, Ms. Williams stated that Defendant hit her in the eye with a piece of a porch rail. The medical records showed that Ms. Williams suffered from a broken nose and a fractured orbital bone and was given multiple doses of pain medication during her eight-hour hospital stay. Ms. Williams testified that her pain level was at a ten out of ten for a two-week period and that she had to take pain medication to keep the pain from coming back. *See State v. Jason C. Carter*, No. M1998-00798-CCA-R3-CD, 2000 WL 515930, at *7 (Tenn. Crim. App. Apr. 27, 2000) (finding sufficient evidence for serious bodily injury where pain medication was prescribed for blows to the head and bruising), *perm. app. denied* (Tenn. Nov. 20, 2000). This Court has held that the subjective nature of pain is a fact to be determined by the trier of fact. *State v. Eric A. Dedmon*, No. M2005-00762-CCA-R3-CD, 2006 WL 448653, at *5 (Tenn. Crim. App. Feb. 23, 2006), *no perm. app. filed*. Additionally, a photograph showed Ms. Williams's eye was swollen shut, and Ms. Williams testified that she still suffered from blurred vision. *See State v. Antonio Howard*, No. W2014-02488-CCA-R3-CD, 2016 WL 3131515 at *7 (Tenn. Crim. App. May 26, 2016) (finding the evidence sufficient to establish serious bodily injury where the victim suffered loss of vision), *no perm. app. filed*.

After reviewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Ms. Williams was in "extreme physical pain" and that her blurred vision constituted a "[p]rotracted loss or substantial impairment of a function of a bodily member." Thus, there was sufficient evidence of "serious bodily injury" to support Defendant's conviction for aggravated assault. Defendant has not challenged whether he acted intentionally or knowingly. Accordingly, Defendant's conviction for aggravated assault is affirmed.

## II. Trial Court's Evidentiary Rulings

### A. Standard of Review

The admissibility of evidence rests within the trial court's sound discretion, and this Court will not overturn a trial court's decision regarding the admissibility of the evidence absent an abuse of that discretion. *State v. Clayton*, 535 S.W.3d 829, 859 (Tenn. 2017) "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *State v. Quintis McCaleb*, __ S.W.3d __, No. E2017-01381-SC-R11-CD, 2019 WL 394092, *5 (Tenn. Aug. 21, 2019). (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)) (citations omitted). "[R]eviewing courts

should review a [trial] court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions. *Id.* "[T]he abuse of discretion standard of review does not permit an appellate court to substitute its judgment for that of the trial court." *Id.* at *6 (quoting *State v. Harbison*, 539 S.W.3d 149, 159 (Tenn. 2018)).

### B. Prior Consistent Statement

Defendant argues that the trial court erred in allowing portions of Ms. Williams's preliminary hearing testimony to be admitted as prior consistent statements because her preliminary hearing testimony did not involve matters about which she testified on direct examination. Defendant also contends that Ms. Williams's prior consistent statements exceeded the scope of cross-examination and served only to improperly bolster her testimony. The State argues that the prior consistent statements were used to rehabilitate Ms. Williams's credibility after Defendant used prior inconsistent statements from the preliminary hearing testimony to attack it.[2]

Prior consistent statements are generally not admissible to bolster the testimony of a witness. *State v. Herron*, 461 S.W.3d 890, 904-905 (citations omitted). Allowing prior consistent statements to bolster a witness's testimony would pose a danger of the jury deciding the case on the repetitive nature of the statements instead of on the testimony given under oath, in court. *Id.* at 905.

One exception to this general rule allows the admission of prior consistent statements to "rehabilitate a witness whose testimony is attacked on cross-examination as a 'recent fabrication' or 'deliberate falsehood.'" *Id.* This exception allows the prior consistent statement to be used as a means to show the witness's trial testimony is consistent with statements made before an improper influence existed. *Id.* Before a prior consistent statement may be admitted, the witness's testimony must have been seriously questioned to the extent that the witness's credibility needs shoring up. *Id.* Prior consistent statements admitted under this exception are not to be used as substantive evidence but only to rehabilitate the witness's credibility. Upon request, the trial court should instruct the jury as to the limited purpose for which the prior consistent statement has been admitted. *Id.*

---

[2] The State also argues that Tennessee Rule of Evidence 106, the rule of completeness, would also allow admission of the prior consistent statements. However, we need not address that issue because, as discussed further below, we conclude that the statements were admissible to rehabilitate the witness's credibility.

On cross-examination, Defendant used portions of Ms. Williams's preliminary hearing testimony that were inconsistent with her trial testimony to impeach her credibility. The trial court found that Defendant had sufficiently questioned Ms. Williams's credibility as to allow the State to use prior consistent statements, from the same preliminary hearing testimony, to bolster Ms. Williams's credibility. Defendant asked for a limiting instruction to the jury, and the trial court agreed. The trial court instructed the jury that the prior consistent statements were "to be used only in assessing the credibility of the witness." The jury is presumed to follow the instructions of the trial court. *State v. Reid*, 164 S.W.3d 286, 323 (Tenn. 2005). Defendant has failed to establish that the trial court abused its discretion in admitting the prior consistent statements, and he is not entitled to relief on appeal.

## C. *Admission of Testimony and Photographs from the Interior of the House*

Defendant argues that the trial court erred in admitting testimony and photographs concerning Defendant's destruction and throwing of food and drink inside Ms. Williams's residence. Defendant argues the evidence is irrelevant under Tennessee Rules of Evidence 401 and 402 because he was indicted for vandalism only with respect to the destruction of Ms. Williams's phone. Additionally, Defendant argues that under Tennessee Rule of Evidence 403, the probative value of the evidence is outweighed by the danger of unfair prejudice. Finally, Defendant argues that the evidence should be excluded as improper character evidence under Tennessee Rules of Evidence 404(a). The State argues that the evidence was relevant to establish the circumstances surrounding the events as well as both Defendant's and Ms. Williams's states of mind. The State further argues that Defendant has failed to show that the trial court abused its discretion in determining that the probative value was not substantially outweighed by the risk of unfair prejudice. The State also argues that Defendant has waived any arguments under Tennessee Rules of Evidence 404(a) for not including the argument in his motion for a new trial.

Evidence must be relevant to be admissible. Tenn. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. Unfair prejudice is generally defined as "[a]n undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *State v. Banks*, 564 S.W.2d 947, 951 (Tenn. 1978); *see State v. Young*, 196 S.W.3d 85, 106 (Tenn. 2006) ("Prejudice becomes unfair when the primary purpose of the evidence at issue is to elicit emotions of 'bias, sympathy, hatred, contempt, retribution, or horror.'") (internal citation omitted).

"A trial court has broad discretion regarding the admissibility of photographs." *State v. Davidson*, 509 S.W.3d 156, 198 (Tenn. 2016). Before a photograph is admissible, it must be verified and shown to be relevant, and the trial court must weigh its probative value against the danger of unfair prejudice. *Id*. A relevant photograph "maybe excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *Id*. at 198-199.

The trial court found that the photographic "proof was relevant to the totality of the circumstances of establishing the Defendant's state of mind during the entirety of events." The trial court also found that Defendant's destruction of items in Ms. Williams's home related to his course of conduct that led to Ms. Williams's fear and going outside. The trial court reviewed the photographs and excluded a photograph showing blood on the floor. The trial court determined that the photographs and testimony related to Defendant's course of conduct, and as such, the prejudicial effect did not outweigh the probative value. Defendant waived his argument that the photographs and testimony should have been excluded as improper character evidence under Tennessee Rule of Evidence 404(a) by failing to object on that basis at trial and in his motion for new trial. *See* Tenn. R. Evid. 103(a)(1); Tenn. R. App. P. 3(e). Defendant has failed to establish that the trial court abused its discretion in admitting the testimony and photographs regarding his destruction of items inside Ms. Williams's residence, and he is not entitled to relief on appeal.

### III. Separate Convictions for Aggravated Assault and Domestic Assault

While admitting that he failed to raise the issue in the trial court, Defendant argues that his convictions for aggravated assault and domestic assault violate the constitutional protections against double jeopardy because they arose from the same act or transaction. Defendant also argues that domestic assault is a lesser-included offense of aggravated assault. Defendant asserts the dual convictions constitute plain error. The State argues that because Defendant failed to argue that his convictions violated double jeopardy in his motion for a new trial, he has waived this argument. Additionally, the State argues that the two offenses did not arise from the same act or transaction and, thus, dual convictions do not violate double jeopardy.

In order to preserve the double jeopardy issue for review, Defendant needed to first raise the issue in his motion for new trial and again in his appellate brief. *State v. Harbison*, 539 S.W.3d 149, 164 (Tenn. 2018) (citing *State v. Bishop*, 431 S.W.3d 22, 43 (Tenn. 2014); *State v. Martinos Derring*, No. W2017-02290-CCA-R3-CD, 2019 WL 244471 at *6 (Tenn. Crim. App. Jan. 16, 2019), *perm. app. denied* (Tenn. May 17, 2019). When a defendant raises an issue in a motion for new trial, the trial court is able to consider the issue and make a ruling. *Harbison*, 539 S.W.3d at 164. Under Tennessee

Rule of Appellate Procedure 36(a), a court need not grant relief to a party "who fail[s] to take whatever action [is] reasonably available to prevent or nullify the harmful effect of an error."  An appellate court may decline to consider issues that a party failed to properly raise. *Bishop*, 431 S.W.3d at 43 (citing *State ex rel. D'Amore v. Melton*, 212 S.W.2d 375, 376 (Tenn. 1948).

However, Tennessee Rule of Appellate Procedure 36(b) allows this Court to take notice of plain errors that were not raised in the trial court.  *State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000).  Issues not raised at trial may be reviewed in the discretion of the appellate court for plain error when these five factors are established: (a) the record clearly establishes what occurred in the trial court; (b) a clear and unequivocal rule of law was breached; (c) a substantial right of the accused was adversely affected; (d) the defendant did not waive the issue for tactical reasons; and (e) consideration of the error is necessary to do substantial justice.  *State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016).  In this case, Defendant admittedly raised the issues for the first time on appeal, thereby waiving plenary review.  Consequently, we will look to see if the trial court's failure to merge the convictions constitutes plain error.

The Double Jeopardy Clause of both the United States and the Tennessee Constitution's guarantee that no person shall be twice put in jeopardy of life or limb for the same offense.  U.S. Const. amend. V; Tenn. Const. art. I, § 10.  The Double Jeopardy Clause provides three separate protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense.  *State v. Watkins*, 362 S.W.3d 530, 541 (Tenn. 2012) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *abrogated on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989)).  Whether multiple convictions violate the protection against double jeopardy is a mixed question of law and fact, which this Court will review de novo without any presumption of correctness.  *State v. Smith*, 436 S.W.3d 751, 766 (Tenn. 2014) (citing *State v. Thompson*, 285 S.W.3d 840, 846 (Tenn. 2009)).

Defendant contends that the trial court's failure to merge his convictions implicates the third type of double jeopardy protection: protection against multiple punishments for the same offense.  The Tennessee Supreme Court has divided such claims into two categories: (1) unit-of-prosecution claims, "when a defendant who has been convicted of multiple violations of the same statute asserts that the multiple convictions are for the same offense"; and (2) multiple description claims, "when a defendant who has been convicted of multiple criminal offenses under different statutes alleges that the statutes punish the same offense."  *Id.* (citing *Watkins*, 362 S.W.3d at 543-44).  Defendant's claim is a multiple description claim.  To address a multiple description claim, we must apply the two-pronged test laid out in *Blockburger v. United*

*States*, 284 U.S. 299, 304 (1932). *See Smith*, 436 S.W.3d at 767; *Watkins*, 362 S.W.3d at 556.

> In a *Blockburger* analysis, our primary focus is whether the General Assembly expressed an intent to permit or preclude multiple punishments. If either intent has been expressed, no further analysis is required. When the legislative intent is unclear, however, we must apply the "same elements test" from *Blockburger*. Under this test, the first step is to determine whether the convictions arise from the same act or transaction. The second step is to determine whether the elements of the offenses are the same. If each offense contains an element that the other offense does not, the statutes do not violate double jeopardy.

*Smith*, 436 S.W.3d at 767 (internal citations omitted).

In the first step of the *Blockburger* analysis, we must determine whether the convictions arise from the same act or transaction. To determine whether the offenses resulted from the same transaction or occurrence, we consider the following factors: (1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct. *Martinos Derring*, 2019 WL 244471 at *9 (quoting State v. Itzol-Deleon, 537 S.W.3d 434, 450 (Tenn. 2017)).

Here, the State argues that there were separate acts. The first "round" was domestic assault committed by Defendant's punching, pulling hair, and scratching Ms. Williams, which resulted in scratches, bruising and a broken nose. The second "round" was Defendant's taking the stick from Ms. Williams and hitting her with it after she had turned to go back into the house, picked up the stick, and hit Defendant with it to defend herself from further attack. The State argues that Ms. Williams's use of the stick was an intervening event and a fresh impulse motivating the subsequent aggravated assault that resulted in her fractured eye-socket and continued blurred vision. We agree with the State's conclusion. Because the actions were not part of the same act or transaction, there was no breach of a clear and unequivocal law and consideration of the issue is not necessary to do substantial justice. Thus, Defendant is not entitled to plain error relief.

However, even if we were to determine that the convictions arose from the same act or transaction, we would still determine that the trial court did not breach a clear and unequivocal rule of law. The second step of the *Blockburger* test is to determine whether the elements of the offenses are the same. If each offense contains an element that the other offense does not, the statutes do not violate double jeopardy. As described above, aggravated assault is an assault that results in serious bodily injury. T.C.A. § 39-13-

102(a)(1)(A)(i).  On the other hand, domestic assault is defined as an assault against a "domestic abuse victim," which includes adults "who have lived together" or "who have dated."  T.C.A. § 39-13-111(a)(2), (3), (b).  In our view, a comparison of the two offenses reveals different elements in each – one requiring a specific degree of injury and the other requiring a specific type of victim.  Based on the above analysis and the facts of this case, we conclude Defendant's convictions for both aggravated assault and domestic assault do not violate a clear and unequivocal rule of law.  Consequently, Defendant is not entitled to plain error relief.

## IV.  Sentencing

Defendant argues that the trial court erred in imposing the maximum sentence allowable by law for aggravated assault.  Defendant also contends that the trial court erred in imposing partial consecutive sentencing.  The State argues that the trial court properly exercised its discretion when it imposed a within-range sentence for the aggravated assault or when it ordered a partially consecutive sentence.

### A.  Sentence Length

When a defendant challenges the length or manner of service of a within-range sentence, this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness.  *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012).  This presumption applies to "within-range sentencing decisions that reflect a proper application of the purposes and principles of the Sentencing Act."  *Bise*, 380 S.W.3d at 707.  A trial court abuses its discretion in sentencing when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining."  *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997) (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)).  This deferential standard does not permit an appellate court to substitute its judgment for that of the trial court.  *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).  The defendant bears the burden of proving that the sentence is improper.  T.C.A. § 40-35-101, Sentencing Comm'n Cmts.

In reaching its decision, the trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment.  *See* T.C.A. § 40-35-102, -

103, -210(b); *see also Bise*, 380 S.W.3d at 697-98. Additionally, the sentence imposed "should be no greater than that deserved for the offense committed" and "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4). The weighing of various enhancement and mitigating factors is within the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). This Court will uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709.

In sentencing the Defendant for aggravated assault, the trial court "considered all of the pertinent testimony and proof offered at trial and the sentencing hearing, including the testimony presented on behalf of the State and the Defendant, as well as the Defendant's allocution." The trial court also reviewed Defendant's presentence report. The trial court found Defendant to be a Range II, multiple offender, which has a sentencing range between six and ten years for the Class C felony of aggravated assault. T.C.A. § 40-35-112(b)(3). In determining the length of the sentence within the multiple offender range, the court found no mitigating factors pursuant to Tennessee Code Annotated section 40-35-113 and found the following two enhancement factors pursuant to Tennessee Code Annotated section 40-35-114: (1) that Defendant had a previous criminal history in addition to those necessary to establish the appropriate range and (2) that "Defendant possessed or employed a deadly weapon during the commission of the offense, in that the evidence at trial showed that he struck [Ms. Williams] on the head with a wooden stick." Defendant had convictions for aggravated assault, aggravated robbery, evading arrest, criminal impersonation, harassment, resisting arrest, and a weapons related offense. The trial court also stated that it was "extremely concerned about the Defendant's history of criminal behavior, including convictions for domestic violence related offenses, especially considering the instant case involves a domestic violence related offense." The trial court was concerned that Defendant lacked "an appreciation for his accountability for his actions and the impact of his criminal behavior on others." The trial court sentenced Defendant to ten years on the aggravated assault charge.

The trial court followed the proper sentencing procedure and sentenced Defendant to a sentence within the range for each conviction. The trial court did not abuse its discretion in sentencing Defendant to the maximum possible sentence for each conviction. Therefore, Defendant is not entitled to relief.

## B. Consecutive Sentencing

Defendant argues that the trial court erred in imposing partial consecutive sentences. Defendant contends that the imposition of consecutive sentences "is an aggregate sentence that is greater than that deserved for the offenses committed, and is

not the least severe measure to achieve the purposes for which the sentence was imposed." Defendant argues that the sentence violates the principles in Tennessee Code Annotated sections 40-35-103(2) and (4). The State argues that the trial court properly exercised its discretion in imposing partially consecutive sentences.

In *State v. Pollard*, 432 S.W.3d 851 (Tenn. 2013), the Tennessee Supreme Court expanded its holding in *Bise* to also apply to decisions by trial courts regarding consecutive sentencing. *Id.* at 859. This Court must give "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." *Id.* at 861. "Any one of [the] grounds [listed in section 40-35-115(b)] is a sufficient basis for the imposition of consecutive sentences." *Id*. at 862 (citing *State v. Dickson*, 413 S.W.3d 735 (Tenn. 2013)). As relevant to this case, the trial court may order sentences to run consecutively if it finds by a preponderance of the evidence that "[t]he defendant is an offender whose record of criminal activity is extensive" or that "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high." T.C.A. § 40-35-115(b)(2), (4).

Here, the trial court found by a preponderance of the evidence that the two factors above applied. Based on these factors, the trial court found that "consecutive sentencing is appropriate and necessary to protect the public against further criminal conduct by the Defendant and relates to the severity of the offenses committed." *See State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995). The trial court found "that [C]ounts 3 and 5 shall be served concurrently with each other, and that [C]ounts 3 and 5 shall be served consecutively to [C]ount 2." Defendant's aggregate sentence was ten years, eleven months, and twenty-nine days. We find that the trial court did not abuse its discretion by ordering Defendant to serve the sentence for Count 2 consecutively with Counts 3 and 5. Defendant is not entitled to relief.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
TIMOTHY L. EASTER, JUDGE